# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:16CR59 |
| Plaintiff, | ) | |
| | ) | FINDINGS AND |
| v. | ) | RECOMMENDATION |
| | ) | |
| JERON MORRIS, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the Motion to Suppress (Filing No. 46) filed by defendant Jeron Morris (Morris). Morris is charged in the Indictment along with co-defendant Preston Pope (Pope). Pope and Morris are charged in Count I of the Indictment with a violation of 18 U.S.C. §§ 1951 and 2, i.e., the robbery of a Walgreens store by threatened force and display of a handgun in Omaha, Nebraska, on August 11, 2015. The Indictment charges the language of the Hobbs Act dealing with robbery affecting interstate commerce. Both Pope and Morris are charged in Count II of the Indictment with a violation of 18 U.S.C. §§ 924(c) and 2, i.e., brandishing a firearm during a crime of violence which may be prosecuted in a court of the United States for the crime charged in Count I of the Indictment. Pope and Morris are charged in Count III of the Indictment with a violation of 18 U.S.C. §§ 2113(a) and 2, for the August 11, 2015, robbery of the U.S. Bank in Omaha, Nebraska, by force, violence and intimidation. Pope and Morris are charged in Count IV of the Indictment with a violation of 18 U.S.C. §§ 924(c) and 2, i.e., brandishing a firearm during a crime of violence for the bank robbery charged in Count II of the Indictment. Pope is charged in Count V with the August 14, 2015, possession of a handgun in Omaha, Nebraska, after having been convicted of a felony, i.e., third degree assault of an officer, in violation of 18 U.S.C. §922(g). Morris is charged in Count VI with the September 27, 2015, possession of a handgun in Omaha, Nebraska, after having been convicted of a felony, i.e., domestic assault causing bodily injury, in violation of 18 U.S.C. § 922(g).

On June 17, 2016, the court held an evidentiary hearing on Morris' motions to suppress and sever along with co-defendant Pope's motions to suppress and sever. During the hearing, the court heard the testimony of Omaha Police Department (OPD) Officer Douglas Herout (Officer Herout) among others and received into evidence, *inter*

*alia*, a search warrant for a white Ford Expedition being held at the OPD Impound Lot (Exhibit 2). During the hearing, Morris requested a continuance of the hearing on his motion to suppress. The court granted Morris' request but completed the hearing as to Pope's motion to suppress and both defendants' motion to sever.[1] The remainder of the evidentiary hearing on Morris' motion to suppress was continued to August 2, 2016.

During the hearing of August 2, 2016, Morris was present with his counsel, Assistant Federal Public Defender Karen M. Shanahan. The United States was represented by Assistant U.S. Attorney Susan T. Lehr. In Filing No. 46, Morris seeks to suppress the search of his vehicle on September 27, 2015. The court heard the testimony of OPD Officers Jacob Pursell (Officer Pursell), Steven Fornoff (Sergeant Fornoff), Katie Rath (Officer Rath), and Adam Fisher (Officer Fisher). Morris' brief was due ten days following the filing of the transcript. The transcript (TR.) was filed on August 6, 2016 (Filing No. 69). Morris subsequently requested and received an extension for filing his brief, which was filed on September 20, 2016 (Filing No. 73). The government requested and received an extension for filing its responsive brief, which was filed on October 13, 2016 (Filing No. 77).

## FINDINGS OF FACT

On August 11, 2015, at around 12:45 a.m., two black males arrived in a white Buick and robbed a Walgreens located at 3001 Dodge Street in Omaha, Nebraska, at gunpoint (TR. 13-14). One of the men pointed a firearm at a customer and took his wallet (TR. 13). The other man jumped a counter where the store clerk was located and started to empty the cash register (TR. 13). The suspects fled the store (TR. 14).

Later on August 11, 2015, at around 5:45 p.m., two males robbed a U.S. Bank located inside the No Frills grocery store at 4240 South 50th Street in Omaha (TR. 14). One of the suspects jumped the counter and ordered a bank teller to place money into a bag, while the other suspect pointed a gun at the tellers and customers in the bank (TR. 14). Following the robbery, the two suspects drove away in a white Buick LeSabre (TR. 14, 18). The white Buick LeSabre was later found near 60th and Frederick Streets, where

---

[1] An order regarding both defendants' motion to sever was filed on September 1, 2016 (Filing No. 71). Pope's motion to suppress was denied on September 28, 2016 (Filing No. 74).

witnesses stated they observed two black males get out of the white Buick and enter a green SUV or minivan (TR. 15, 18). When law enforcement searched the abandoned white Buick, they found a magazine containing a forty-caliber live round of ammunition (TR. 15-16).

On August 14, 2015, OPD officers located a green minivan driven by Pope who was subsequently arrested and detained (Findings and Recommendation, Filing No. 71). A firearm was discovered as a result of Pope's arrest (TR. 17). Following Pope's arrest, OPD officers searched the house of Pope's half-brother and found the box to the firearm and located a white Ford Expedition with paper license plates parked in the driveway (TR. 18, 23). One of the bait bills from the U.S. Bank robbery was used in the purchase of the Ford Expedition (TR. 24). Morris was developed as the other suspect in the robberies and an OPD locate bulletin was issued for Morris.

On September 27, 2015, Officer Pursell was on patrol in uniform and in a marked cruiser in the Southwest Precinct, which is south of Dodge Street and west of 42nd Street in Omaha, during the A shift, which is 10:40 p.m. to 7:10 a.m. (TR. 116). At approximately 1:12 a.m., Officer Pursell received a dispatch regarding a wanted party, i.e., Jeron Morris, at the Flashbacks bar at 3013 South 83rd Plaza, Omaha, Nebraska (TR. 116-117). The dispatch advised that an anonymous caller recognized Morris from a Crime Stoppers broadcast. The caller added Morris arrived in a white Ford Expedition with a partial license plate number of "SYL" and Morris was armed with a firearm (TR. 117). Officer Pursell drove to Flashbacks and was joined by Officer Fisher who arrived in uniform and in a separate marked cruiser (TR. 117-118). The officers located the Ford Expedition parked in the parking lot and parked their cruisers near the Ford Expedition (TR. 118). The officers performed computer data checks on the vehicle and Morris (TR. 119). The check came back that the license plate on the Ford Expedition was stolen out of Bellevue, Nebraska, and the VIN number of the Ford Expedition came back registered to a U-Win Auto Sales (TR. 118). The data check for Jeron Morris revealed a locate for the OPD robbery unit and a photo of Morris (TR. 119). Sergeant Sheridan, also in uniform and in a marked cruiser, arrived on the scene and called for additional cruisers to stage at separate entrances of

Flashbacks in the event Morris exited through one of the exits of Flashbacks other than facing the parking lot (TR. 120).

Officer Fisher alerted the other officers that he saw Morris exiting Flashbacks (TR. 120). Sergeant Sheridan approached Morris and called to Morris by using Morris' first name, Jeron (TR. 120). After looking at Sergeant Sheridan and Officers Fisher and Pursell, Morris ran eastbound through the parking lot (TR. 120). Officer Pursell pursued Morris on foot eastbound through the Flashbacks parking lot, then Morris ran northbound through the parking lot, ran eastbound again, crossed 82nd Avenue, ran through the Police Federal Credit Union parking lot, around the north side of the Credit Union, ran eastbound, jumped over a retaining wall, ran further eastbound, jumped another retaining wall, and continued through the American Red Cross parking lot where he ran up a flight of stairs and disappeared from Officer Pursell's sight (TR 121). Officer Pursell drew his firearm and ran up the stairs where he discovered Morris lying prone on the concrete (TR. 121). Officer Pursell held Morris at gunpoint until other officers arrived and handcuffed Morris (TR. 122). Morris was taken back to the Flashbacks parking lot and no weapon was found on Morris (TR. 136). Officer Pursell walked back to trace the flight path of Morris but found no weapon (TR. 123).

Sergeant Sheridan called Sergeant Fornoff, who was aware of the armed robberies at the Walgreens store and the U.S. Bank (TR. 131). When informed of the detention of Morris and the location of the white Ford Expedition bearing stolen plates, Sergeant Fornoff requested the vehicle be towed to the OPD Impound Lot and to conduct an inventory search of the vehicle (TR. 133). Officer Rath, also at the Flashbacks scene, was told to conduct the inventory search (TR. 143). Officer Rath opened the door to the Ford Expedition and looked under the front seat where she saw a black handgun (TR. 143). Sergeant Fornoff received a second call from Sergeant Sheridan who told Sergeant Fornoff a firearm had been located in the vehicle at the beginning of the search and the search of the vehicle was stopped (TR. 134). Sergeant Fornoff was aware of Morris' prior conviction for domestic violence, which would have prohibited Morris from possessing a firearm (TR. 133). Sergeant Fornoff instructed Sergeant Sheridan to stop any further search of the vehicle, have it towed to the impound lot, and await a search warrant for the vehicle (TR.

134). Officer Fisher completed the tow report, and accompanied the Ford Expedition in tow to the OPD Impound Lot (TR. 157). A search warrant for the Ford Expedition in the OPD Impound Lot was obtained by Detectives Hardisty and Cook (TR. 134; Exhibit 2). Subsequently, the Ford Expedition was searched and various items were seized from the vehicle as reflected on the OPD Receipt and Inventory (Exhibit 2).

## ANALYSIS

Morris seeks to suppress the firearm found in the white Ford Expedition parked outside of Flashbacks on September 27, 2015. Morris asserts the firearm was unlawfully seized under the pretext of an inventory search as an exception to the warrant requirement of the Fourth Amendment.

"A police officer, after lawfully taking custody of an automobile, may conduct a warrantless inventory search of the property to secure and protect vehicles and their contents within police custody." **United States v. Rehkop**, 96 F.3d 301, 3015 (8th Cir. 1996). Sergeant Fornoff testified it is the policy of the OPD to inventory a vehicle if it is going to be towed to foreclose claims against the OPD for damage or lost property (TR. 132). The vehicle was going to be towed after finding stolen license plates on the white Ford Expedition. Even if the police suspect other illegal activity, they are not precluded from conducting an inventory search of an impounded vehicle. **United States v. Harris**, 795 F.3d 820, 822 (8th Cir. 2015). The inventory search was stopped upon locating the firearm underneath the driver's seat, and the Ford Expedition was secured while in tow and while at the OPD Impound Lot until a search warrant was obtained. There is no evidence to suggest the OPD officers failed to follow the OPD inventory policy as testified to by Sergeant Fornoff.

The search warrant for the Ford Expedition (Exhibit 2) sets forth probable cause in that there would be a fair probability that contraband or evidence of crime would be found in the vehicle. **Illinois v. Gates**, 462 U.S. 213 (1983). A common sense reading of the affidavit for the Ford Expedition sets forth probable cause for the warrant.

**IT IS RECOMMENDED TO CHIEF JUDGE LAURIE SMITH CAMP that:**

Morris' Motion to Suppress (Filing No. 46) be denied.

## ADMONITION

Pursuant to NECrimR 59.2 any objection to this Order and Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Order and Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 15th day of November, 2016.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge