IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiffs,<br><br>vs.<br><br>JERON MORRIS,<br><br>          Defendants. | 8:16CR59<br><br>MEMORANDUM AND ORDER |

      This matter is before the Court on the Findings and Recommendation, ECF No. 78, issued by Magistrate Judge Thomas D. Thalken recommending that the Motion to Suppress, ECF No. 46, filed by the Defendant, Jeron Morris ("Defendant"), be denied. Defendant filed an Objection to the Findings and Recommendation and a brief in support, ECF Nos. 84 and 85, as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a). The Government responded to Defendant's Objection, ECF No. 88, directing the Court to its previous briefing on the matter. For the reasons set forth below, the Findings and Recommendation will be adopted, and the Motion to Suppress will be denied.

## BACKGROUND

      Defendant is charged in the Indictment, ECF No. 1, along with co-defendant Preston Pope ("Pope"). Defendant is charged with affecting interstate commerce by means of robbery in violation of 18 U.S.C. §§ 2, 1951 (Count I); brandishing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. §§ 2, 924(c) (Count II); bank robbery by force, violence, and intimidation in violation of 18 U.S.C. §§ 2, 2113(a) (Count III); brandishing a firearm during a crime of violence in violation of 18 U.S.C. §§

2, 924(c) (Count IV); and possession of a weapon after having been convicted of a felony in violation of 18 U.S.C. § 922(g) (Count VI).

Defendant does not object to the Magistrate Judge's findings of fact and the Court adopts and incorporates those findings into this Memorandum and Order. The Court provides the following by way of summary:

On August 11, 2015, at around 12:45 a.m., two black males arrived in a white Buick and robbed the Walgreens located at 3001 Dodge Street in Omaha, Nebraska, at gunpoint. Later, on August 11, 2015, at around 5:45 p.m., two males robbed a U.S. Bank located inside the No Frills grocery store at 4240 South 50th Street in Omaha. One of the suspects ordered a bank teller to place money into a bag, while the other suspect pointed a gun at the tellers and customers in the bank. Following the robbery, the two suspects drove away in a white Buick LeSabre.

The white Buick LeSabre was later found and witnesses told law enforcement they observed two black males get out of the white Buick and enter a green SUV or minivan. On August 14, 2015, Omaha Police Department ("OPD") officers located a green minivan driven by Pope who was subsequently arrested and detained. Following Pope's arrest, OPD officers searched the house of Pope's half-brother and found evidence of a firearm and located a white Ford Expedition with paper license plates parked in the driveway. One of the bait bills from the U.S. Bank robbery was used in the purchase of the Ford Expedition.

OPD developed Defendant as the other suspect in the robberies and issued a "locate bulletin" for Defendant. On September 27, 2015, Officer Jacob Pursell ("Officer Pursell") received a dispatch regarding Defendant. The dispatch advised that an

anonymous caller recognized Defendant from a Crime Stoppers broadcast and that the Defendant was located at the Flashbacks bar at 3013 South 83rd Plaza, Omaha, Nebraska. The caller added that Defendant arrived in a white Ford Expedition with a partial license plate number of "SYL" and that Defendant was armed with a firearm.

Officer Pursell drove to Flashbacks and was joined by Officer Adam Fisher ("Officer Fisher"). The officers located the Ford Expedition parked in the parking lot and parked their cruisers near it. The officers performed computer data checks on the vehicle and Defendant. The check revealed that the license plate on the Ford Expedition was stolen out of Bellevue, Nebraska, and the VIN number of the Ford Expedition was registered to a U-Win Auto Sales. The data check for Defendant revealed the locate bulletin and a photo of Defendant. Other uniformed officers arrived on scene and additional cruisers were placed at the various Flashbacks entrances.

Officer Fisher alerted the other officers that he saw Defendant exiting Flashbacks. Sergeant Sheridan approached Defendant and called to him. After seeing officers, Defendant fled the area on foot. Officer Pursell pursued Defendant several blocks and continued through another parking lot where Defendant ran up a flight of stairs and disappeared from Officer Pursell's sight. Officer Pursell drew his firearm and ran up the stairs where he discovered Defendant lying prone on the concrete. Officer Pursell held Defendant at gunpoint until other officers arrived.

Defendant was taken back to the Flashbacks parking lot. No weapon was found on Defendant or near his path of flight. Sergeant Sheridan called Sergeant Steven Fornoff ("Sergeant Fornoff"), who was aware of the armed robberies at the Walgreens store and the U.S. Bank. When informed of Defendant's detention and the location of

the white Ford Expedition bearing stolen plates, Sergeant Fornoff requested the vehicle be towed to the OPD Impound Lot, and that an inventory search of the vehicle be conducted. At the evidentiary hearing, when asked to describe his reasoning for the inventory search and tow, Sergeant Fornoff responded to the following questions:

> Q. What was your reason for asking him to conduct an inventory search?
>
> A. I had concerns that there would be evidence inside the vehicle linking him to the robberies that I mentioned prior.
>
> Q. At that point you also had the report of the stolen plates on the vehicle?
>
> A. Yes.
>
> Q. Was it your intent to have the vehicle towed?
>
> A. Yes.
>
> Q. And is that why you requested the inventory search be done?
>
> A. Yes, which is the policy of the Omaha Police Department.
>
> Q. And I was just going to get to that, so thank you. What is the policy of the Omaha Police Department regarding towing and vehicles?
>
> A. All vehicles that are going to be towed by the Omaha Police Department, it's mandatory that we conduct an inventory search of the vehicle to stop any kind of claims of damage or lost property done by the Omaha Police Department, and also to protect any valuable property found inside the vehicle for the owners of the vehicle.

TR. 131-32, ECF No. 69, Page ID 265-66.

Officer Katie Rath ("Officer Rath"), also at the Flashbacks scene, was told to conduct the inventory search. Officer Rath opened the door to the Ford Expedition and looked under the front seat where she saw a black handgun. Sergeant Fornoff received a second call from Sergeant Sheridan who told Sergeant Fornoff a firearm had been located in the vehicle at the beginning of the search and the search of the vehicle was

stopped. Sergeant Fornoff was aware of Defendant's prior conviction for domestic violence, which would have prohibited Defendant from possessing a firearm. Sergeant Fornoff instructed Sergeant Sheridan to stop any further search of the vehicle, have it towed to the impound lot, and await a search warrant for the vehicle. OPD officers subsequently obtained a search warrant based in part on the finding of the firearm. Officers searched the Ford Expedition and seized various items located during the search.

Defendant moves to suppress all evidence located during the inventory search and subsequent search of the Ford Expedition. After an evidentiary hearing and subsequent briefing, the Magistrate Judge recommended that the Court deny the Motion to Suppress. The Magistrate Judge reasoned that the search of the Ford Expedition was a lawful inventory search and the warrant was supported by probable cause. Defendant objects to the Magistrate Judge's conclusions.

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(C), the Court must make a de novo determination of those portions of the findings and recommendation to which the Defendants have objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendation. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## DISCUSSION

### I. Inventory Search

The Magistrate Judge concluded that the firearm was located during a valid inventory search. "Law enforcement officers may conduct a warrantless search when

5

taking custody of a vehicle to inventory the vehicle's contents 'in order to protect the owner's property, to protect the police against claims of lost or stolen property, and to protect the police from potential danger.'" *United States v. Ball*, 804 F.3d 1238, 1240-41 (8th Cir. 2015), *cert. denied,* 136 S. Ct. 1209 (2016) (quoting *United States v. Hartje,* 251 F.3d 771, 775 (8th Cir. 2001)). "The search of a vehicle to inventory its contents must nevertheless be reasonable under the totality of the circumstances." *United States v. Taylor*, 636 F.3d 461, 464 (8th Cir. 2011) (citing *United States v. Hall,* 497 F.3d 846, 851 (8th Cir. 2007)). "The reasonableness requirement is met when an inventory search is conducted according to standardized police procedures, which generally 'remove the inference that the police have used inventory searches as a purposeful and general means of discovering evidence of a crime.'" *Taylor*, 636 F.3d at 464 (quoting *United States v. Marshall,* 986 F.2d 1171, 1174 (8th Cir. 1993)). "Even if police fail to adhere to standardized procedures, the search is nevertheless reasonable provided it is not a pretext for an investigatory search." *Id.* at 465 (citing *United States v. Hall,* 497 F.3d 846, 852 (8th Cir. 2007)).

     Defendant argues that Sergeant Fornoff's statement demonstrates pretext for an investigatory search. In support of this argument, Defendant asserts that no evidence shows Sergeant Fornoff's decision to tow the Ford Expedition was consistent with OPD policy rather than motivated by a desire to gather evidence of a crime. Defendant also asserts that the Magistrate Judge erred by failing to consider Sergeant Fornoff's statement that he asked for an inventory search because he "had concerns that there would be evidence inside the vehicle linking him to the robberies that I mentioned prior." TR. 131, ECF No. 69, Page ID 265. The Court will address each of these arguments.

### 1. Decision to Tow

"The police are not precluded from conducting inventory searches when they lawfully impound the vehicle of an individual that they also happen to suspect is involved in illegal activity." *United States v. Harris*, 795 F.3d 820, 822 (8th Cir. 2015) (quoting *United States v. Pappas*, 452 F.3d 767, 771 (8th Cir. 2006)). "Rather, when police are conducting 'inventory searches according to such standardized policies, they may keep their eyes open for potentially incriminating items that they might discover in the course of an inventory search, as long as their sole purpose is not to investigate a crime.'" *Id.* (quoting *United States v. Marshall,* 986 F.2d 1171, 1176 (8th Cir. 1993)). "An inventory search that follows standard police procedures is generally not a pretext to illegally obtain evidence." *United States v. Harris*, 795 F.3d 820, 822-23 (8th Cir. 2015).

Sergeant Fornoff testified that it was standard OPD policy to perform an inventory search prior to towing. TR. 131-32, ECF No. 69, Page ID 265-66. Defendant does not argue that it was improper to conduct an inventory search prior to towing, but argues that there is no evidence that the decision to tow was based on OPD policy. However, testimony reveals that under OPD policy, the decision to tow the Ford Expedition was within officer discretion. During cross examination at the evidentiary hearing, counsel for Defendant specifically asked Sergeant Fornoff whether a vehicle had to be towed when it had stolen plates. TR. 137, ECF No. 69, Page ID 271. Sergeant Fornoff testified that under such circumstances, it was the officer's choice. *Id.*

Sergeant Fornoff's testimony adequately establishes that the decision to tow the vehicle was pursuant to OPD policy. Defendant implies that compliance with standard procedure was lacking because the decision to tow was discretionary and not part a

7

specific procedure with respect to vehicles with stolen plates. However, the Eighth Circuit has specifically stated that "[i]t is not feasible for a police department to develop a policy that provides clear-cut guidance in every potential impoundment situation, and the absence of such mechanistic rules does not necessarily make an impoundment unconstitutional." *United States v. Petty*, 367 F.3d 1009, 1012 (8th Cir. 2004). Thus, "[p]olice officers are entitled to use their discretion in deciding to impound a vehicle, provided that their decisions are based on standard criteria and not upon suspected criminal activity." *United States v. Evans*, 781 F.3d 433, 436 (8th Cir. 2015) (citing *Colorado v. Bertine,* 479 U.S. 367, 375 (1987)). In this case, it is undisputed based on Sergeant Fornoff's testimony that OPD officers had discretion as to whether to tow the Ford Expedition. Thus, the decision to tow was consistent with OPD towing policy and OPD officers were entitled to conduct an inventory search prior to towing.

### 2. Pretext for Investigatory Search

Defendant argues that the Magistrate Judge failed to consider evidence that the inventory search of the Ford Expedition was pretext for an investigatory search. In order to establish pretext, "[s]omething else must be present to suggest that the police were engaging in their criminal investigatory function, not their caretaking function, in searching the defendant's vehicle." *Taylor*, 636 F.3d at 465. In *Taylor*, law enforcement failed to follow its own inventory policy, thus "remov[ing] the inference that the search was investigatory." *Id*. Therefore, the court considered whether the investigatory search was pretextual. The Eighth Circuit determined that the "something else" to show pretext was the officer's testimony "that the basis for the traffic stop, the arrest, the towing of the vehicle, and the inventory search was the officer's belief that Taylor had narcotics in his

vehicle." *Taylor*, 636 F.3d at 465. The Eighth Circuit concluded that because law enforcement failed to follow its own inventory policy and the officer's testimony demonstrated pretext, the search did not fall under the inventory search exception to the Fourth Amendment warrant requirement. *Id.*

Defendant argues that this case is similar to *Taylor* based on Sergeant Fornoff's testimony that he "had concerns that there would be evidence inside the vehicle linking him to the robberies." TR. 131, ECF No. 69, Page ID 265. While this statement in isolation may be evidence of pretext, Sergeant Fornoff's testimony established that officers determined that the Ford Expedition's plates had been stolen; that based on the stolen plates the vehicle would be towed to the OPD impound lot; and that standard OPD procedure was to perform an inventory search prior to towing. TR. 131-32, ECF No. 69, Page ID 265-66. "If an impoundment is otherwise valid, an investigatory motive does not prevent police from towing a vehicle and conducting an inventory search." *Evans*, 781 F.3d at 437 (citing *United States v. Garner,* 181 F.3d 988, 991–92 (8th Cir. 1999)). As noted above, there is sufficient evidence that OPD officers acted according to policy when exercising their discretion to tow the Ford Expedition. Moreover, there is no evidence that officers departed from standard procedure, nor is there evidence that the decision to tow was based purely on an investigatory motive. Accordingly, the inventory search was lawful.

## II. Probable Cause to Support Warrant

Defendant objects to the Magistrate Judge's conclusion that the warrant to search the Ford Expedition, obtained subsequent to the inventory search, was supported by probable cause. Defendant argues that the Magistrate Judge's conclusion

was based on the faulty assumption that the inventory search was lawful, and therefore the evidence supporting the affidavit was lacking. For the reasons stated above, the Court concludes that the inventory search was valid. Accordingly, because the officers did not act solely with an investigatory motive that would render the inventory search invalid, the evidence and subsequent search warrant need not be excluded as fruit of the poisonous tree. The evidence in the affidavit was sufficient to support a finding of probable cause.

## CONCLUSION

For the reasons discussed, the Findings and Recommendation will be adopted, and the Motion to Suppress will be denied.

IT IS ORDERED:

1. The Findings and Recommendation, ECF No. 78, are adopted;

2. The Motion to Suppress, ECF No. 46, filed by the Defendant Jeron Morris, is denied; and

3. The Defendant's Objection to the Findings and Recommendation, ECF Nos. 84, is overruled.

Dated this 7th day of February, 2017.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge